UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------

UNITED STATES OF AMERICA,

                    Plaintiff,

  -against-

JEREMY ZIELINSKI,

                 Defendant.

--------------------------------------------------------------

**MEMORANDUM IN OPPOSITION
TO PETITION**

**Case No. 11-CR-533**

## PRELIMINARY STATEMENT

JEREMY ZIELINSKI hereby files through counsel this Memorandum in Opposition to the Government's Petition for a modification of his conditions of supervised release. While defendant agrees that the government has the authority to file such a petition in general, for the reasons set forth below, he maintains that this petition is without basis and should be rejected by this Court entirely. Defendant has been fully complying with all the conditions set forth by the sentencing court in New Jersey in 2006, has no objection to any of those restrictions, and circumstances have not changed. There is thus no basis for the Court to consider the current petition or modify the existing conditions.

## BACKGROUND

In 2002 the defendant was arrested on charges of attempted dissemination of indecent material to a minor under *NY Penal Law § 235.22* as well as promotion of sexual performance by a child less than seventeen (17) years of age under *NY Penal Law § 263.15*. At that point in time the defendant himself was only eighteen (18) years of age. As the hearing will show, the

1

defendant was under investigation by the state when he was still seventeen (17) and the arrest was made only after he had turned eighteen (18). The hearing will show that all of the communications and actions which led to the charges were between the defendant and an undercover agent who posed as a minor. There was no physical contact between the defendant and any minor during the time period in question.

Defendant agrees with Probation as is set forth in its letter dated November 15, 2011 that a computer was used relative to the aforementioned offenses. Defendant was also charged and pled guilty to one (1) count of Bail Jumping as he fled the jurisdiction of New York State. In 2006 he was sentenced by the Warren County Court to a term of one to three (1-3) years on the arrest charges and a term of one to three (1-3) years for bail jumping. He has fully served his sentence and was released from State custody in January, 2011.

Defendant was charged in 2004 with conspiracy to commit access device fraud in the U.S. District Court for the District of New Jersey. In December, 2004 the prosecutor in the Warren County case filed a detainer with the U.S. Marshal in the District of New Jersey. Therefore, the United States Government was aware that the defendant was to be turned over to Warren County after defendant's federal time had been served.

Annexed hereto as Exhibit A is the Plea Agreement entered into between the defendant and the Government in November, 2005 wherein he agreed to plead guilty to *one* (1) count of the indictment. The Plea Agreement made clear that the Court may require the defendant to serve a term of supervised release.

In February, 2006, while awaiting sentencing on the federal charge, the defendant entered into a plea agreement regarding the state charges. Defendant was thereafter sentenced on the federal charge by the Honorable William J. Martini on June 28, 2006. Annexed hereto as

2

Exhibit B is a copy of the transcript from those proceedings. There was a discussion about the case in New York State which was pending *before* the defendant was arrested in the federal case. *See Exhibit B* at 18. We learn from that discussion that the United States was clearly aware of the charges then pending in New York State. Furthermore, the defendant by this time had already agreed to plead guilty in state court upon the conclusion of his federal sentence.

Judge Martini sentenced the defendant to twenty-one (21) months incarceration and two (2) years of supervised release upon his release from imprisonment. The Court's sentence in that regard is found at *Exhibit B* at 28-30. The Court imposed numerous supervised release conditions, but chose not to impose any conditions based on the New York State charges despite the fact that all parties were aware of the nature of and imminent conviction on said charges. The special conditions imposed are once again set forth in the minutes of the proceedings from the sentencing which are annexed hereto as *Exhibit C.*

Defendant served the balance of his federal imprisonment term, was transferred to Warren County, pled guilty to the pending charges (as agreed in February, 2006), was sentenced, and completed his sentence on January 28, 2011. The defendant has been a law-abiding and productive citizen since that time.

The Judgment from the District of New Jersey is annexed hereto as *Exhibit D,* acknowledged by the defendant and Joanne DeFreest of the U.S. Probation Office for the Northern District of New York on August 4, 2011. This Court is specifically referred to page 4, where it states that "*upon a finding of a violation of ... supervised release ...* the Court may ... modify the conditions of supervision." (Emphasis added.)

The present petition before this Court seeks to impose a litany of onerous new restrictions, and states as cause for the petition the following: (1) On or about August 30, 2006

the defendant was convicted of the Warren County charges; (2) the Warren County conviction occurred after the federal conviction[1]; (3) New York State has labeled the defendant a "level 2 sex offender" as a result of the Warren County conviction; and (4) computers were used to facilitate the state and federal offenses. *See, Petition* at 3. Nowhere under "Cause" does the Probation Office allege that the defendant has in any way, shape or form violated any of the current conditions, or that he has done anything at all since the Office accepted supervision on August 4, 2011 with the existing conditions in place, to indicate a need for new modifications.

Submitted for this Court's *in camera* review as *Exhibit E* is a November, 2011 report prepared by Dr. Richard B. Kreuger, the Medical Director of the Sexual Behavior Clinic of the New York State Psychiatric Institute at Columbia University.[2] Dr. Kreuger's *CV* is annexed hereto as *Exhibit F*. His report goes into great detail about the defendant's conduct which led to his state arrest at age eighteen (18). Dr. Kreuger put the defendant through a battery of tests, a personal examination and an interview; and his report clearly indicates that the defendant has a negligible risk of recidivism, has no mental health issues, and is not a danger in any manner to anyone, let alone a sexual danger to minors.

It is thus respectfully submitted that the Probation Office has failed to set forth adequate grounds to modify the existing conditions of supervision. Even if it had, the proposed conditions are not reasonably related to sentencing factors, involve greater deprivations of liberty than are reasonably necessary, are excessively overbroad and vague, impermissibly delegate judicial functions to probation officers and unaccountable private parties, and present a risk of abuse that could compromise the defendant's pursuit of a pending civil rights lawsuit. There is

---

[1] The petition omits that only the *conviction*, not the underlying *conduct*, occurred after the federal conviction.

[2] This report was generated in the course of pending legal issues between the defendant and the mother of his six (6) year old son in which he is seeking increased visitation rights. It is being provided in CONFIDENTIAL form to this Court.

also circumstantial evidence that the petition itself is retaliation prohibited by the First Amendment.

This Court should thus deny the petition in its entirety.

## SUPERVISED RELEASE MODIFICATIONS AND CONDITIONS IN GENERAL

A district court may "after considering the factors set forth in section *3553(a)* ... modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release...." *18 U.S.C. § 3583(e)(2); U.S. v. Akinrosotu*, 637 F.3d 165, 167 (2d Cir. 2011).

Non-mandatory conditions of supervised release may only be imposed if they meet certain requirements. *See, U.S. v. Reed*, No. 09-2093-CR (2d Cir. May 5, 2011); *U.S. v. Reeves*, 591 F.3d 77, 80 (2d Cir. 2010). First, they must be "reasonably related" to the *3553(a)(1)* and *(a)(2)(B)-(D)* factors; including the nature and circumstances of the instant offense, the history and characteristics of the defendant, the need to protect the public from further crimes of the defendant, and the need to provide the defendant educational or vocational training, medical care or other correctional treatment "in the most effective manner." *18 U.S.C. § 3583(d)(1).* Second, they must involve "no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section *3553(a)(2)(B), (a)(2)(C)*, and *(a)(2)(D)*." *18 U.S.C. § 3583(d)(2).* Third, they must be "consistent with any pertinent policy statements issued by the Sentencing Commission." *18 U.S.C. § 3583(d)(3).*

The government bears the burden of establishing the validity of a supervised release condition. "We have long held that a term of supervised release is part of a defendant's sentence, and, like imprisonment, restricts a defendant's liberty and fundamental rights. As a

result, when the government seeks to restrict a defendant's liberty through a term of supervised release, it shoulders the burden of proving that a particular condition of supervised release involves no greater deprivation of liberty than is reasonably necessary to serve the goals of supervised release." *U.S. v. Weber*, 451 F.3d 552, 559 (9th Cir. 2006) (citations omitted). There must be "a clear indication of the condition's purpose...." *U.S. v. Myers*, 426 F.3d 117, 127 (2d Cir. 2005). "No condition is presumed valid; rather, a condition is reasonable only if it is not 'unnecessarily harsh or excessive.'" *Reeves*, 591 F.3d at 82.

A court may not delegate determinations of the nature and extent of the sentence to the probation office through ambiguous or open-ended supervised release conditions, as making such determinations is a solely judicial function. *See, e.g., Myers*, 426 F.3d at 130; *U.S. v. Peterson*, 248 F.3d 79, 85 (2d Cir. 2001).

Supervised release conditions must comply with the Due Process vagueness doctrine. "If a condition, however well-intentioned, is not sufficiently clear, it may not be imposed." *Reeves*, 591 F.3d at 81. "A condition is unconstitutional if it is so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Id.* (internal quotation marks and citations omitted). A condition must also "provide sufficiently explicit standards for those who apply it." *Farid v. Ellen*, 593 F.3d 233, 243 (2d Cir. 2010); *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972). "In other words, in order to survive a vagueness challenge, a rule must both provide adequate notice to those who are governed by it *and* adequately cabin the discretion of those who apply it." *Farid, supra* (emphasis in original).

Finally, "[i]f a special condition implicates a fundamental liberty interest, we must carefully examine it to determine whether it is 'reasonably related' to the pertinent factors, and 'involves no greater deprivation of liberty than is reasonably necessary,' *18 U.S.C. § 3583(d)*,

and our application of these criteria must reflect the heightened constitutional concerns. If the liberty interest at stake is fundamental, a deprivation of that liberty is 'reasonably necessary' only if the deprivation is narrowly tailored to serve a compelling government interest." *U.S. v. Myers*, 426 F.3d 117, 126 (2d Cir. 2005); *Reeves*, 591 F.3d at 83.


## POINT I

### The sentencing court's judgment is entitled to substantial deference

The defendant here was sentenced by Hon. Judge William J. Martini of the U.S. District Court for the District of New Jersey in 2006. At the time of sentence, Judge Martini was duty-bound to consider--and did consider--the same sentencing factors as this Court before imposing sentence. This included consideration the then-pending New York State charges, to which the defendant had already agreed to plead guilty. *See, e.g. U.S. v. Wing*, 433 F.3d 622, 628 (8th Cir. 2006) (consideration of pending charges); *U.S. v. Dixon*, 318 F.3d 585, 591 (4th Cir.2003) (consideration of uncontested facts underlying arrests).

"[T]he law in this circuit is well established that, in the absence of record evidence suggesting otherwise, we presume 'that a sentencing judge has faithfully discharged her duty to consider the statutory factors.'" *U.S. v. Verkhoglyad*, 516 F.3d 122, 129 (2d Cir. 2008), quoting *U.S. v. Fernandez*, 443 F.3d 19, 30 (2d Cir. 2006). In the absence of evidence that Judge Martini was derelict in his duties, his choices of sentence and conditions are entitled to substantial deference. Even if this Court might have acted differently when imposing sentence, it "must give 'due regard to the district court's superior feel for the case,'" *U.S. v. Winters*, 416 F.3d 856, 864 n. 4 (8th Cir. 2005); *U.S. v. Herrera-Zuniga*, 571 F.3d 568, 583 (6th Cir. 2009);

7

*U.S. v. Brown*, No. 10-20092 (5th Cir. Oct. 29, 2010), and should not disturb the sentencing court's decisions.

## POINT II

**The defendant's state convictions are too remote in time to justify any additional conditions**

The petition's sole alleged "cause" is that the defendant was convicted of the Warren County charges. It is respectfully submitted that the conduct underlying those charges, which took place almost eleven (11) years ago when the defendant was a teenager, without more, is too remote in time to justify any additional conditions. The Sixth, Eighth and Ninth Circuits have all reached similar conclusions. *See, U.S. v. Carter*, 463 F.3d 526 (6th Cir. 2006) (vacating sex offender treatment program condition imposed due to seventeen year old offense); *U.S. v. T.M.*, 330 F.3d 1235, 1240-41 (9th Cir. 2003) (vacating restrictions based on twenty-year-old kidnapping and molestation convictions and recent evaluation that probationer "did not 'present' as a treated sex offender" as abuse of discretion); *U.S. v. Kent*, 209 F.3d 1073 (8th Cir. 2000) (vacating mental health program condition imposed due to unrelated thirteen year old offense). *Cf. U.S. v. Hahn*, 551 F.3d 977 (10th Cir. 2008) (upholding treatment condition based on state crimes occurring after instant federal offense).

## POINT III

**The petition was filed in retaliation for the defendant's pursuit of a *Bivens* action**

The Probation Office accepted supervision of the defendant from the District of New Jersey without qualification on August 4, 2011. The defendant is and has been in full compliance with the terms of supervision since his release. The probation office has not alleged

otherwise, nor has it alleged that the defendant has done anything to indicate a need for greater restrictions.

What *has* happened since August 4, 2011 are the "Halloween letter" which is annexed hereto as Exhibit F, the defendant's response letter of October 25, 2011 which is annexed hereto as Exhibit G, and a *Bivens* action the defendant filed on November 15, 2011 that is pending before this Court (*Zielinski v. DeFreest, et al.,* No. 6:11-cv-1350). A discussion of these issues has already been given to this Court by way of a letter dated December 11, 2011 (Docket Entry 8) by the Office of the Public Defender. It appears as though the only motivation for this petition is retaliation for the defendant's opposition to the Halloween letter.

Viewing the petition in its full context brings its retaliatory nature into focus. The Probation Office accepted the current conditions in August, 2011 without qualification. It has had several months to petition for modifications, but chose not to. The defendant has fully complied with the terms of supervision; and has done nothing to warrant increased suspicion or restrictions. The Probation Office has not alleged otherwise. Yet as soon as the defendant files a civil rights lawsuit, the Probation Office immediately seeks (1) to ban access to "any computer or any other device with online capabilities, at any location;" (2) to force the defendant into "mental health treatment" and give an unaccountable "treatment provider" the power to determine that computer use is "contraindicated to [the defendant's] course of recovery;" (3) sweeping powers to search any of the defendant's "papers, effects, computers, electronic communications devices, and any data storage devices or media;" and (4) unbridled authority to confiscate papers and property indefinitely. These are far greater intrusions upon the defendant's liberty than the current conditions that allow for home visits, seizure of plain-view

contraband, and inspection of Internet-connected computers; and are exactly what someone intent on abusing their authority to obstruct litigation would ask for. [3]

"A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 559 F.3d 119, 129 (2d Cir. 2009). "[W]here, as here, circumstantial evidence of a retaliatory motive is sufficiently compelling, direct evidence is not invariably required." *Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2001). This Court should thus deny the petition it in its entirety.

## POINT IV

### Conditions 1-4, 7 and 9 are not reasonably related to the sentencing factors, involve greater deprivations of liberty than reasonably necessary, are unconstitutionally vague and overbroad, and impermissibly delegate judicial functions

#### A.    Condition 1

Condition 1 prohibits the defendant from having "direct contact" or "indirect contact ... through a device" with any person under 18 "unless it is supervised by a person approved of by the probation officer;" and requires the defendant to "reasonably avoid and remove himself or herself [sic] from situations in which [he] has any other form of contact with a minor."

This restriction prohibits "direct contact," "indirect contact" and "any other form of contact" with a minor unless "supervised by a person approved of by the probation officer." It is respectfully submitted that this condition would neither "provide adequate notice to those who are governed by it" or "adequately cabin the discretion of those who apply it." *Farid*, 593 F.3d at 243. It delegates unfettered authority over the definition of "contact with a minor" and the circumstances under which it will be allowed to "the probation officer." It provides no

---

[3] *Bivens* liability attaches personally, so incentives both for retaliation and obstruction are significant.

standards to guide decisions of who will be "approved" to "supervise" contact, if anyone, or what such supervision would entail.   Nor does it provide any guidance on what it means for the defendant to "*reasonably avoid and remove   [him]self* ... from situations in which [he] has any other form of contact with a minor."   What the emphasized phrase means is anyone's guess, and it is a mystery indeed what forms of human contact exist *other* than "direct" and "indirect."

This is precisely the type of condition that was vacated in *U.S. v. Myers*, 426 F.3d 117 (2d Cir. 2005) and *U.S. v. Voelker*, 489 F.3d 139 (3d Cir. 2007). *Myers* vacated a special condition prohibiting a supervisee from contact with minors "without supervision by a responsible, law-abiding adult aware of [his] background and/or conviction" approved of by the probation office, *Id.* at 122, in part because "the district court may not improperly *delegate* this determination [of whether contact will be allowed] to the probation office."   *Id.* at 130 (emphasis in original).   *Voelker* vacated a "no contact without approval" condition because "the court delegated absolute authority to the Probation Office to allow any such contacts while providing no guidance whatsoever for the exercise of that discretion. ... This is the very kind of unbridled delegation of authority that we struck down in *Loy II. See* 237 F.3d at 266."   *Id.* at 154.

This condition would also violate the defendant's First and Fourteenth Amendment rights to family integrity by conditioning contact with his own son and other family members on prior approval of the probation officer.   *Myers*, 426 F.3d at 125.   Further, a prohibition on contact with minors forecloses nearly all possibility of working in retail, hospitality, fast food or similar industries that involve regular contact with minors.   To this extent, it constitutes an impermissible occupational restriction not based on the instant credit card offense.   *See, e.g., U.S. v. Peterson*, 248 F.3d 79, 85 (2d Cir. 2001) (vacating condition that supervisee notify

11

employers of state court incest charges, citing *18 U.S.C. § 3563(b)(5)* and *U.S.S.G. § 5F1.5(a)(1)*, because "[a]n occupational restriction must be based on the offense of conviction.").

### B.    Condition 2

Condition 2 would prohibit the plaintiff from "be[ing] in any area in which persons under the age of 18 are likely to congregate, such as school grounds, child care centers, or playgrounds, without the permission of the probation officer."

The combination of "area which persons under the age of 18 are likely to congregate" and the expansionary use of "such as" followed by a non-exclusive list of examples leads inevitably to the conclusion that "men of common intelligence must necessarily guess at [this condition's] meaning and differ as to its application." *Reeves,* 591 F.3d at 81. It is impossible to know what constitutes a sufficient number of minors to constitute a "congregation," let alone whether minors are "likely" to assemble in such numbers at any particular place. *Peterson* rejected a condition prohibiting a supervisee from being "on any school grounds, child care center, playground, park, recreational facility or in any area in which children are likely to congregate." *Id.* at 86. The Ninth Circuit also has rejected such bans. *See, e.g., U.S. v. Rudd,* No. 10-50254, at fn. 6  (9th Cir. Nov. 23, 2011), vacating a location ban which included "the vague reference to 'places primarily used by persons under the age of 18.'  This provision could refer to anything from malls and hamburger or pizza joints to movie theaters, bowling alleys and skating rinks.").

This restriction would also violate the defendant's right to family integrity by preventing him from going to prohibited locations with his own son or other family members; and by failing

to set forth any standard for granting permission, it constitutes an impermissible delegation to the probation officer.

### C.     Condition 3

Condition 3 would require the defendant to "register with the state sex offender registry in any state where you reside, are employed, carry on a vocation or are a student." He does not oppose this condition, but notes that it is redundant as failure to register is a felony.

### D.     Condition 4

#### *1. Involuntary Participation in a Mental Health Program*

Condition 4 would compel the defendant to "participate in a mental health program which will include, but will not be limited to, participation in a treatment program for sexual disorders."

The Probation Office has not alleged in any way that, a year after release, the defendant suddenly suffers from mental health issues or "sexual disorders;" let alone so severely that involuntary "treatment" is needed.

The Court must ensure any treatment is provided "in the most effective manner." *18 U.S.C. § 3553(a)(2)(D)*. "[M]ental health treatment and services can only be effective when the consumer embraces it, not when it is coercive and involuntary. Involuntary mental health treatment is a serious curtailment of liberty [that] indeed, may interfere with recovery by compromising personal responsibility and lowering self-esteem." Involuntary treatment should be a "last resort," employed only after stringent procedural protections and substantial evidence that no less coercive arrangement would be effective. *National Mental Health Assocation*

13

*Position Statement 22: Involuntary Mental Health Treatment*, available at http://www.nmha.org/go/position-statements/22.

This Court may order forced participation in a treatment program "only if, after a sex offender evaluation, the Probation Office and the Court conclude that participation is appropriate." *U.S. v. Prochner*, 417 F.3d 54, 64 (1st Cir. 2005). Here, such an evaluation has already been done and has made clear that involuntary treatment is unwarranted. *Exhibit E.* In fact, placing low-risk individuals like the defendant into treatment has been found to *increase* recidivism risk significantly. Lovins, Lowenkamp and Latessa, *Applying the Risk Principle to Sex Offenders: Can Treatment Make Some Sex Offenders Worse?*, 89 The Prison Journal 344, 353-54 (2009) (exposing low-risk offenders to high-risk offenders increases recidivism risk by as much as 27% by reinforcing negative social learning and disrupting prosocial networks). *See also, U.S. v. Perazza-Mercado*, 553 F.3d 65, 76-79 (1st Cir. 2009) (vacating pornography ban based solely on offense of conviction as plain error, stating that "[t]he Sentencing Commission creates such generally applicable conditions of supervised release"); *U.S. v. Burroughs*, 613 F.3d 233, 243 (D.C. Cir. 2010) (vacating Internet ban on same grounds).

### B. Subjection to Polygraph Examinations

Condition 4 would also require the defendant to submit to a "polygraph, computerized voice stress analyzer or other similar device to obtain information necessary for supervision, case monitoring and treatment."

Polygraphs and similar devices are notoriously unreliable. The Supreme Court has concluded that "there is simply no consensus that polygraph evidence is reliable." *U.S. v. Scheffer*, 523 U.S. 303, 309-10 (1998). Some courts have endorsed the view that polygraphs

14

may provide incentives for honesty if probationers *think* they are reliable. *See, U.S. v. Taylor*, 338 F.3d 1280, 1284 n. 2 (11th Cir. 2003) (polygraphs may be useful because some "probationers fear that any false denials of violations will be detected"); *U.S. v. Lee*, 315 F.3d 206, 217 (3d Cir. 2003) (same); *Owens v. Kelley*, 681 F.2d 1362, 1370 (11th Cir.1982) (polygraphs may deter a probationer "from violating the terms of his probation by instilling in him a fear of detection").

The First Circuit, on the other hand, has sensibly argued that probationer ignorance as a basis for upholding use of an inherently unreliable device may be "irredeemably flawed." "[W]e cannot accept on faith that polygraphs are effective at deterring lies, irrespective of their accuracy. The deterrent effect of polygraph testing, after all, is related to the reliability question: [A probationer] will only be deterred from lying if he believes that a polygraph will likely expose his lies." *U.S. v. York*, 357 F.3d 14, 23 (1st Cir. 2004). It follows that when, as here, a defendant knows polygraphs are unreliable and fears only that they will have *incorrect* results, their only pretext of usefulness evaporates. This is especially so when, also as here, the defendant knows that polygraph results are inadmissible in virtually every context considered by the courts.

### E.     Condition 7

Condition 7 would grant an unknown "treatment provider" the power to "determine[] that the use of a computer or Internet service is contraindicated to [the defendant's] course of recovery" and for the Court to "prohibit the use of a computer if the Court is convinced that such is the case based upon the evidence."

Under this condition, a private unaccountable "treatment provider" would be delegated absolute authority to define "course of recovery." They would also be delegated absolute authority to determine, by some unknown process, that access to computers is "contraindicated." If they made such a determination, this Court could ban computer use if it "is convinced that such [contraindication] is the case based upon the evidence." This is inscrutably vague at best.

Also, an absolute ban on computer use would deprive the defendant of his fundamental liberty interests in, among other things, using computers to pursue pending litigation. As such, it could not be imposed on the mere recommendation of a "treatment provider," but only if it were narrowly tailored to serve a compelling governmental interest by the least restrictive means. *Myers*, 426 F.3d at 126; *Reeves*, 591 F.3d at 83.

F.      Condition 9

Condition 9 would prohibit the defendant from accessing materials depicting "sexually explicit conduct" as defined in *18 U.S.C. § 2256(2)* "while in treatment and for the remainder of the term of supervision following completion of treatment."

This condition assumes that treatment will be ordered by this Court, which as shown above should not be done. In any event, the defendant objects to this condition only to the extent that the definition of "sexually explicit conduct" in *18 U.S.C. § 2256(2)* includes "actual *or simulated*" sexual acts and thus reaches a wide range of perfectly legitimate and protected books, R-rated movies, and other materials. The defendant suggests that a reasonable (albeit unnecessary) alternative would be a prohibition on accessing child pornography as defined in *18 U.S.C. § 2256(8)*.

## POINT V

**Conditions 5 and 6 involve greater deprivations of liberty than reasonably necessary and are unconstitutionally vague and overbroad**

A.    Condition 5

Condition 5 would prohibit the defendant from using or possessing "any computer or any other device with online capabilities, at any location, except at [his] place of employment, unless [he] participates in the Computer Restriction and Monitoring Program."[4]  It would also permit the Probation Office to confiscate "computer equipment including any internal or external peripherals, internet-capable devices, and data storage media" at any time, indefinitely, "for a more thorough examination."

The defendant has already agreed to and is complying with all the restrictions previously imposed by the District of New Jersey, including provisions allowing for examinations of his computer equipment and monitoring.  The Probation Office has presented absolutely nothing to suggest that the current conditions are inadequate.  The prohibition on access to or use of devices "with online *capabilities*" includes equipment that has network *potential*, even if it is never actually connected to the Internet.  This would clearly prohibit the defendant from using courthouse law library computers.  Particularly troubling is the request for an indefinite confiscation condition.  This condition would allow the Probation Office to gain access to privileged materials or completely destroy the defendant's ability to litigate his *Bivens* action by confiscating his legal files and equipment used to create them under the guise of a "more thorough examination."

"The rights to complain to public officials and to seek administrative and judicial relief from their actions are ... 'among the most precious of the liberties safeguarded by the Bill of

Rights.'"  *Dougherty v. Town of North Hempstead Bd. of Zoning*, 282 F.3d 83, 91 (2d Cir.

2002), quoting *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967).   Any

supervised release condition that would infringe upon these rights must be narrowly tailored to a

compelling governmental interest and be the least restrictive means available.  *Reeves*, 591 F.3d

at 83; *Myers*, 426 F.3d at 126.   The proposed condition is not, and should therefore be rejected

in favor of the adequate existing conditions.


B.     Condition 6

The defendant has no objection to this condition except to the extent that the phrase

"employment *approved* by the probation officer" (emphasis added) is somewhat ambiguous and

could be construed as an occupational restriction.


**POINT VI**

**Condition 8 involves a greater deprivation of liberty than reasonably necessary, is not
reasonably related to the sentencing factors, violates the defendant's Fourth Amendment
rights, and is unconstitutionally vague and overbroad**

Condition 8 would grant the Probation Office the power to search the defendant and any

"property, house, residence, vehicle, papers, effects, computer, electronic communications

devices, and any data storage devices or media, to search at any time ... upon reasonable

suspicion concerning a violation ... of supervised release or unlawful conduct by [the

defendant]."   It would also grant the Probation Office power to "remove" any items for "a more

thorough examination."

---

[4] The petition contains no information at all on what this program entails.  The defendant has thus not had any
opportunity to present objections to it.

18

The defendant acknowledges that, in general, a sentencing court has the power to include a special condition requiring consent to search upon "reasonable suspicion." The District Court for the District of New Jersey had this power when it sentenced the defendant. *See, e.g., U.S. v. Sczubelek,* 402 F.3d 175, 182-84 (3d Cir. 2005) (discussing whether searches of probationers based on "reasonable suspicion" pass Fourth Amendment scrutiny). However, the sentencing court *chose not to impose a search condition* after considering all the sentencing factors. That sound determination should not be disturbed. The defendant has been free for nearly a year, is in full compliance with the existing conditions, and the petition is devoid of any grounds for increased search and seizure powers.

This Court should also deny the request for this condition because it fails to set forth any limits on the scope of or documentation required for searches or removals of the defendant's property. Under the proposed condition, the Probation Office could search and indefinitely seize absolutely anything in the defendant's home--including papers being prepared for litigation against the Office and other privileged communications and documents--with just the barest suspicion that he has engaged in any "unlawful conduct." This is impermissible. *See U.S. v. Balon,* 384 F.3d 38, 48 (2d Cir. 2001) (affirming district court's finding that indefinite removal provisions are impermissible).

## POINT VII

**Condition 10 would violate the Ex Post Facto clause and is otherwise unconstitutional**

Condition 10 would require the defendant to "contribute to the cost of any evaluation, testing, treatment and/or monitoring services rendered in an amount to be determined by the

probation officer based on the defendant's ability to pay and the availability of third party payments."

Imposition of this condition would violate the Ex Post Facto clause. The Ex Post Facto clause prohibits the government from retroactively "altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis,* 519 U.S. 443, 441 (1997). "The Ex Post Facto Clause prohibits increased penalties based on past offenses, regardless of the date of conviction." *Maria v. McElroy,* 68 F.Supp.2d 206, 229-30 (E.D.N.Y. 1999). The sentencing court took into account "the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed" and "any other pertinent equitable considerations" when determining the fine to impose as part of the sentence. *2004³ U.S.S.G. §§ 5E1.2(d)(7) and (8).* The fine "is punitive," *Id.,* and there is no statutory authority to require the defendant to pay the government anything outside of the fine provisions. Therefore, the proposed condition would have the unconstitutional effect of retroactively increasing the amount the defendant is required to pay the government for supervision.

There are a number of other problems with this condition. It is unconstitutionally vague because it has no guidelines for a probation officer to follow in making decisions. It is an impermissible delegation to leave to the probation officer decisions as to which "services rendered" the defendant would have to pay for, his "ability to pay," or the amount he would have to pay. *See, e.g., U.S. v. Kassar,* 47 F.3d 562, 568 (2d Cir. 1995) (district court may not delegate decisions on amount or schedule of payments to probation officer); *U.S. v. Merric,* 166 F.3d 406, 409 (1st Cir. 1999) ("it is the inherent responsibility of the judge to determine matters of punishment and this includes final authority over all payment matters.http://scholar.google.com/scholar_case?case=11712481416097967133&hl=en&as_sdt=3

,75,99,107,122,138,162,286,287,288,289,349,350,351,352,380 - [2]").  Equal protection issues also arise if the defendant's payment duty varies with his "ability to pay"--*i.e.* whether he is rich or poor--and whether he can receive "third party payments" from some kind of insurance.

Therefore the request for this condition should be denied.


## POINT VIII

### Conditions 11 and 12 lack a rational basis

Condition 11 would require the defendant to submit to "a program for substance abuse" that "may include inpatient and/or outpatient treatment."  Condition 12 would prohibit the defendant from using alcohol under any circumstance for the remainder of his supervision.

There is no rational basis for these conditions.  The defendant has never abused drugs or alcohol; his crimes were not in any way related to drug or alcohol use; he was excused from drug testing by the sentencing court, *see Exhibit C*; he passed the one drug test that the Probation Office administered (in or around August, 2011); and there is no indication or allegation whatsoever of any drug use or alcohol abuse.  This Court should reject these entirely arbitrary requests out of hand.


## CONCLUSION

For the reasons set forth above, none of the requested conditions should be authorized by this Court.  While this Court certainly has the power to modify the conditions of release, several of the proposed conditions violate the defendant's constitutional rights; several are extremely overbroad and vague or delegate unbridled authority to probation or private parties; and most are completely unrelated to the charge for which the defendant stands convicted.  The alleged

---

[5] The 2004 Guidelines Manual was in force when the defendant committed the instant offense.

impetus for the application by Probation is conduct which occurred more than ten (10) years ago when the defendant was just eighteen (18) years old. This conduct is simply too remote in time to justify any modifications. The defendant has been free for nearly a year and has never violated the existing conditions; has a full time job; is taking college classes; and last month was examined by a highly qualified professional who concludes that he is not a danger to anyone. Despite all this, the Probation Office suddenly seeks--without evidence or articulable reasons and with questionable motivations--to force the defendant into "mental health treatment" against his will and ban him from all unsupervised contact with minors, including his own family; supposedly because of what he, now twenty-eight (28) years old and pursuing a law degree, did as a teenager.

Therefore, it is respectfully submitted that the government has failed to show any genuine need to modify the existing conditions of supervision, and as such the petition should be denied in its entirety.

Dated: January 3, 2012              CARTER, CONBOY, CASE, BLACKMORE
                               MALONEY & LAIRD, P.C.

By: _____
           JAMES A. RESILA
           Bar Roll No.: 102434
           Attorneys for Defendant
           Office and P.O. Address
           20 Corporate Woods Boulevard
           Albany, NY 12211-2362
           Phone: (518) 465-3484
           E-Mail: jresila@carterconboy.com