UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA,                              \*

                          Plaintiff,            \*

                -v-    11-cr-533              \*

JEREMY ZIELINSKI,                                      \*

                          Defendant.            \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


    Transcript of Proceeding regarding the above-referenced matter, held before the Honorable David E. Peebles, United States Magistrate Judge, at the James T. Foley United States Courthouse, 445 Broadway, Albany, New York, on March 12, 2013.


APPEARANCES:    OFFICE OF THE UNITED STATES ATTORNEY
                445 Broadway
                Albany, New York  12207
                    By:  Robert A. Sharpe, A.U.S.A.

                JEREMY ZIELINSKI, Pro Se

                JAMES A. RESILA, ESQ.
                Standby Counsel
                20 Corporate Woods Boulevard
                Albany, New York  12211

U.S. v ZIELINSKI - 11-cr-533

1          COURT CLERK:  Today is March 12th, 2013,
2   in the matter of the United States of America versus
3   Jeremy Zielinski, case number 11-cr-533.  May we have
4   appearances for the record, please.
5          MR. SHARPE:  Robert Sharpe on behalf of
6   the United States Government.  Good morning, Judge
7   Peebles.
8          THE COURT:  Good morning, Mr. Sharpe.
9          MR. ZIELINSKI:  Jeremy Zielinski for
10  defendant/petitioner.
11         THE COURT:  Mr. Zielinski.
12         MR. ZIELINSKI:  Mr. Resila standby
13  counsel.  Sorry, your Honor.
14         THE COURT:  Yes, I wanted to address the
15  issue of counsel.  Mr. Zielinski, you were told on
16  December 6th, when the summons in this matter was issued,
17  that you should either retain counsel or complete a CJA
18  financial affidavit form to demonstrate your entitlement
19  for assigned counsel.  Judge McAvoy reinforced that in
20  his memorandum and decision, order dated January 8th,
21  2013, and directed you to either retain counsel or file
22  the required affidavit by January 31, 2013; you did
23  neither.  He indicated that he would assume that you were
24  proceeding pro se, and now you have Mr. Resila here.
25  This puts the Court and U.S. Attorney's Office in kind of

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v ZIELINSKI - 11-cr-533

1  a disadvantage because -- particularly the Court because
2  I haven't authorized Mr. Resila to be paid to assist you
3  in connection with this matter.  You obviously either
4  didn't read Judge McAvoy's decision or for some reason
5  decided it really didn't apply to you.
6           What is the situation?  Do you request
7  assigned counsel at this point?
8           MR. ZIELINSKI:  No, your Honor.  I -- I'm
9  proceeding pro se.  I made an agreement with Mr. Resila
10 privately to pay him to be here in case I get over -- in
11 case I get in over my head, he can file his appearance.
12          THE COURT:  So you are not requesting that
13 I authorize his payment as an assigned attorney?
14          MR. ZIELINSKI:  No, your Honor, I'm not.
15          THE COURT:  Mr. Resila, you're satisfied
16 with that arrangement?
17          MR. RESILA:  Yes, your Honor.  I am here
18 just to act as standby counsel.  Mr. Zielinski and I have
19 a -- a private arrangement regarding that and my payment
20 for his service today and that's what I will be limited
21 in doing.
22          THE COURT:  All right. Well, I'm a little
23 more comfortable with the fact that you do have standby
24 counsel here.  It's not easy to represent yourself in a
25 federal court proceeding.  You can be seated.  I know

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v ZIELINSKI - 11-cr-533

1  that Mr. Resila is here to provide you legal advice but I
2  have to ensure that in deciding to proceed pro se, you
3  are knowingly and voluntarily waiving your right to
4  counsel.  You hopefully have been advised and -- at a
5  prior time because of the nature of this proceeding,
6  particularly the part that deals with the supervised
7  release violation petition, you have an absolute right to
8  be represented by counsel.  If you cannot afford to hire
9  an attorney, then one could be appointed to represent you
10 if I find that you are financially eligible.
11              It's always difficult, as I said, as a
12 pro se individual to represent yourself and, of course,
13 you understand that if Judge McAvoy concludes that you
14 violated terms of your supervised release, one of those
15 sanctions that he could order is that your supervised
16 release status be revoked and that you be sentenced to an
17 additional period of incarceration.
18              You understand the seriousness of this
19 hearing?
20              MR. ZIELINSKI:  Yes, I do, your Honor.
21              THE COURT:  All right.  And have you ever
22 represented yourself in any other proceedings?
23              MR. ZIELINSKI:  Not in -- not in an
24 in-court appearance.  I have done lots of court work
25 through paperwork.  Nothing where I actually had to

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v ZIELINSKI - 11-cr-533

1   appear in court in trial.  No.
2               THE COURT:  What is the extent of your
3   education?
4               MR. ZIELINSKI:  I have a associate's -- I
5   have an associate's degree in liberal arts, I have a
6   paralegal degree, I have -- I spent six years working in
7   the prison law library.  So --
8               THE COURT:  So you have some familiarity
9   with the Federal Rules of Evidence, for example, although
10  they don't strictly apply to this proceeding and the
11  Federal Rules of Criminal Procedure?
12              MR. ZIELINSKI:  Yes, your Honor, I do.
13              THE COURT:  You are familiar with Rule
14  32.1 of the Federal Rules of Criminal Procedure?
15              MR. ZIELINSKI:  Yes, your Honor.
16              THE COURT:  All right.  Well, as I said,
17  I'm a little bit more comfortable with the fact that Mr.
18  Resila is here, and I would encourage at some point you
19  feel you are overwhelmed or uncomfortable with your
20  position here, that you consider retaining him and having
21  him represent you formally in this proceeding.  But for
22  now, you're knowingly and voluntarily waiving your right
23  to be formally represented by counsel in this proceeding?
24              MR. ZIELINSKI:  There was one preliminary
25  issue that I wanted to address.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v ZIELINSKI - 11-cr-533

1         THE COURT:  Well, I need a yes or no to
2  that question.  Do you need to ask the question before
3  you answer?
4         MR. ZIELINSKI:  Right.  I need to ask the
5  question before I can answer it.
6         THE COURT:  All right.  Proceed.
7         MR. ZIELINSKI:  There is actually two
8  separate proceedings here.  There's habeas petition.
9         THE COURT:  I understand.
10        MR. ZIELINSKI:  And the revocation
11 petition.  I wanted to ask that the proceeding be
12 bifurcated because the habeas corpus challenges the
13 constitutionality of limitation of the conditions of
14 supervised release.  Judge McAvoy found that the habeas
15 petition stated claim before I was removed from the
16 program that formed the basis for the government's
17 supervised release revocation petition.
18        One of the claims that I made in the
19 habeas petition was that the program had no procedure to
20 protect against retaliatory or arbitrary expulsions.
21 When I was removed, the government filed its revocation
22 petition based on the fact that he was removed, which is
23 exactly what I allege was going to happen in the habeas
24 petition.
25        THE COURT:  And you in fact filed a civil

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v ZIELINSKI - 11-cr-533

1    action alleging retaliation.
2                MR. ZIELINSKI:  Right.  I have filed a
3    civil action against because of that.
4                THE COURT:  Why should I bifurcate these
5    proceedings?  What prejudice would you suffer if I
6    proceed to have both issues addressed in this evidentiary
7    hearing as Judge McAvoy contemplated?
8                MR. ZIELINSKI:  I can't prepare a defense
9    to the revocation petition until I know -- and really
10   until the government knows what the scope of protected
11   conduct within that program is.  If, for example, the
12   Court was to find that the program was operating
13   unconstitutionally in whole or in part, then some of the
14   conduct that the government may allege could have been
15   justified.  If -- if, on the other hand, the Court were
16   to find that it wasn't, that it was operating
17   constitutionally, then I would have to present an
18   entirely different defense, either mitigation or
19   reasonable good faith belief that I was constituting a
20   constitutional right.  I can't do that until I know.  I
21   can't even make a decision which way -- what I have to
22   defend against until I know what the scope of the conduct
23   I'm allowed to engage in that program is.  And the other
24   issue would be that if the Court agrees that the re --
25   the removal procedure, the lack of removal procedures in

U.S. v ZIELINSKI - 11-cr-533

1   the program violated due process, then the removal could
2   form the basis of the revocation process anyway because I
3   don't think we are going to get any agreement between me
4   or the government that I was removed without any written
5   notice or hearing of any kind, either before or after the
6   removal.  The first that I learned of it was when the
7   government filed the revocation petition and even they --
8   when I called the program operators, they wouldn't even
9   confirm or deny that I had been removed.  I had actually
10  submitted the discovery request in the habeas claim to
11  even get a -- get information on whether I was removed at
12  all or why.  So I don't think it's -- I think it's
13  impossible for me to prepare any kind of defense to the
14  revocation petition when the habeas claim is undecided,
15  especially when Judge McAvoy sort of threw the whole
16  program into constitutionality -- into Constitutional
17  doubt before I was even removed.
18              THE COURT:  Mr. Sharpe, what is the
19  government's petition regarding that request?
20              MR. SHARPE:  We object.  Don't think
21  that's necessary or appropriate under the circumstances
22  and we just -- Mr. Zielinski certainly can't speak for
23  the government in terms of what we could see, either what
24  we disagree with him on and for that matter, even his
25  characterization of things with Judge McAvoy throwing out

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1   the constitutionality of the program, that's news to us.
2   We're not familiar with that.  If -- notwithstanding his
3   proffered explanation, we don't understand why it would
4   be that the Court couldn't deal with both of these issues
5   simultaneously.
6              If the government could jump to a point, I
7   want to make sure that we're prepared to deal with what's
8   going on here today and I want that -- on behalf of the
9   government, I did understand the nature of the
10  proceeding.  I guess we thought -- I hope I didn't make
11  an improper assumption that this was a preliminary --
12  going through things in terms of setting things up, how
13  we would proceed hereafter, the government does not have
14  the witnesses from FMHA here today.  We didn't think that
15  -- that we were necessarily doing that aspect of the
16  hearing before Your Honor.  Only I have met with those
17  people yesterday and -- did I misunderstand the nature of
18  this proceeding?
19             THE COURT:  You did.  I was prepared to --
20             MR. SHARPE:  To actually conduct the --
21  the hearing?
22             THE COURT:  That was Judge --
23             MR. SHARPE:  I didn't understand the
24  nature of the directive.  I should have clarified that.
25  I apologize.  That's completely on me.  I didn't realize

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v ZIELINSKI - 11-cr-533

1  the hearing was going to be conducted before Your Honor.
2  As I said, I met with them and -- but I did not ask them
3  to appear here today and told them that I thought we have
4  clarification on various issues and we come out of here
5  with a date.  I apologize sincerely to the Court and, for
6  that matter, to Mr. Zielinski.  I don't have those
7  witnesses here today and that's due to my
8  misunderstanding of the proceeding.
9              THE COURT:  My marching orders from Judge
10 McAvoy were to conduct a hearing.  He framed the issue in
11 his memorandum and decision.  Resolution of this matter
12 can only properly be resolved through a hearing which
13 would allow the Court to hear evidence of defendant's
14 involvement in the sexual offender treatment program, the
15 nature and substance of the program's material, methods
16 and procedures and the bona fides of defendant's
17 objection to participating therein.  It was my intention
18 to conduct that evidentiary hearing today.  I was going
19 to roll the two hearings together and to that extent, Mr.
20 Zielinski's request for bifurcation is denied.
21             My expectation was I would go forward
22 first with the government adducing evidence relating to
23 the supervised release violation, I would then permit Mr.
24 Zielinski to oppose that and also to support his habeas
25 petition and then I was going to allow the government to

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v ZIELINSKI - 11-cr-533

1    respond to Mr. Zielinski's habeas presentation and then
2    make a report and recommendation to Judge McAvoy based on
3    the evidence adduced.
4             Is there some way we can salvaged this by
5    at least going forward on the supervised release
6    violation aspect and then adjourn and essentially
7    permitting the second prong to be presented at a future
8    date?
9             MR. SHARPE:  We have -- we have Probation
10   Officer Patnaude here and he can certainly address
11   various aspects of the supervised release violation.  As
12   it relates to Mr. Zielinski's alleged noncompliance with
13   what he was required to do, we intended to -- again, I
14   apologize, Judge, and I certainly should have clarified
15   this.  This is -- but certainly we intended to also take
16   testimony from the two F.M.H.A. witnesses in that regard.
17            Obviously we will do whatever the Court
18   directs us to do.  We can take testimony from
19   Mr. Patnaude.  I apologize, I -- I knew that obviously
20   there's been a, if you will, debate or discussion or
21   various issues regarding Mr. Zielinski's request to be
22   provided with various things and we have done our best to
23   comply with all of that and we thought that the Court had
24   addressed some of that in its recent decision but not all
25   of that.  So the -- you know, just misunderstood

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v ZIELINSKI - 11-cr-533

1   apparently that we were to go right into the hearing.
2   I --
3              THE COURT:  My intent in issuing the
4   decision was to address all of Mr. Zielinski's requests
5   for discovery and I thought I had done that.  You --
6   either of you believe that there are outstanding
7   discovery issues to be addressed by the Court?  Mr.
8   Zielinski?
9              MR. ZIELINSKI:  Yes, your Honor.  There
10  was -- there was an e-mail that went from Probation
11  Officer Patnaude to F.M.H.A. on November 6th.  The
12  government was provided with the F.M.H.A. file and in the
13  e-mail of Probation Officer Patnaude said that he
14  requested -- he suggested that I continue in treatment
15  pending the resolution of the habeas challenge and that
16  the usual thing they do is if somebody is alleged to be
17  not complying with the conditions of treatment is to set
18  up a three-way meeting between the program provider,
19  probation and the supervisee.  He ended the letter with,
20  this is the route I believe we should take.  Let me know
21  what your thoughts are and then the next communication
22  that I have is the 14th from F.M.H.A. back to Probation
23  Officer Patnaude informing him that I had been removed.
24  Now there was no meeting that took place at all.  I
25  didn't even know that this conversation was taking place

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1  until after I got discovery and I would like to know what
2  went on, if -- if what Probation Officer Patnaude is
3  saying is correct, that the normal procedure before they
4  remove is have a three-way meeting, what is that
5  procedure, what is the document for and why wasn't it
6  followed in this case?  Is there any other communication
7  back and forth between the government and F.M.H.A.?
8              THE COURT:  I already addressed your
9  request for discovery of the probation file.  These are
10 questions that you can properly ask the probation officer
11 as well as any sexual treatment program who testifies
12 here on cross-examination.
13             Mr. Sharpe, in your mind what additional
14 discovery issues remain?
15             MR. SHARPE:  The government's believed we
16 complied with what's required of us.  We just -- we knew
17 that Mr. Zielinski continued to ask for various things.
18             THE COURT:  All right.  Well, I don't see
19 any sense of going forward.  I think this needs to be
20 rescheduled.  I denied Mr. Zielinski's application to
21 bifurcate.  We will conduct an evidentiary hearing and we
22 will address, as Judge McAvoy instructed me to do, both
23 the supervised release violation petition and the
24 petition for writ of habeas corpus and I think I just
25 elaborated how I see that hearing going with the

1    government presenting first, you obviously will have a
2    right, Mr. Zielinski, to cross-examine any witnesses and
3    then I'll have you present a defense and also present
4    anything -- any evidence in support of your habeas
5    petition and then the government will have that
6    opportunity to respond to that.  Again, if you request
7    it, I may give you an opportunity to reply or provide a
8    rebuttal briefly, that would be in my discretion,
9    depending how the hearing goes.
10                 MR. ZIELINSKI:  Would the Court be willing
11   to direct the government to get a little bit more detail
12   in the revocation?  There's no dispute I was removed from
13   the program but that's the only thing that this petition
14   alleges.  I have no idea whether they are alleging as far
15   as conduct goes, what I have to defend against.
16                 THE COURT:  I'm not going to tell either
17   you or the government how to present the case, so we will
18   have to wait to see how it unfolds.  So as far as I am --
19                 MR. SHARPE:  Again, I want to apologize to
20   the Court, to Mr. Zielinski and to Mr. Resila as well.  I
21   apologize for misunderstanding and obviously I should
22   have clarified that.  If I had a question in that regard,
23   obviously I understand that the Court's indulgence being
24   here today and I obviously -- if we have got to
25   reschedule this in some other manner where we have to

                    Lisa L. Tennyson, CSR, RMR, FCRR
                 UNITED STATES DISTRICT COURT - NDNY

U.S. v ZIELINSKI - 11-cr-533

```
 1   come to you, we're more than happy to do that and I --
 2              THE COURT:  Where do you live?
 3              MR. ZIELINSKI:  I'm sorry?
 4              THE COURT:  Where do you live?
 5              MR. ZIELINSKI:  Amsterdam, your Honor.
 6              THE COURT:  Just trying to figure out how
 7   much of an inconvenience it would be to have you all come
 8   to Syracuse.  I still think it's probably better to be
 9   held in Albany.  Sex offender treatment program is
10   located where?
11              MR. SHARPE:  Here in Albany.
12              THE COURT:  All right.  Then I'll have my
13   courtroom deputy reach out and check my schedule and we
14   will try to reschedule it.  I apologize to you, Mr.
15   Zielinski, that this didn't go forward.  I was prepared
16   to go forward at this time to make a resolution.  So I
17   will see you both hopefully within the next couple of
18   weeks.
19              MR. ZIELINSKI:  Thank you, your Honor.
20              MR. SHARPE:  Sorry again, your Honor.
21              MR. RESILA:  Thank you, Judge.
22              (Whereupon, proceeding concluded)
23                * * * * * * * * * *
24
25
```

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v ZIELINSKI - 11-cr-533

1
2
3
4              C E R T I F I C A T I O N
5
6
7     I, Lisa L. Tennyson, RMR, CSR, CRR, Official Court
8  Reporter in and for the United States District Court,
9  Northern District of New York, hereby certify that the
10 foregoing 15 pages of testimony taken by me to be a true
11 and complete computer-aided transcript to the best of my
12 ability.
13
14  _____      *Lisa L. Tennyson*      _____
15            Lisa L. Tennyson, R.M.R., C.S.R., C.R.R.
16
17
18
19
20
21
22
23
24
25

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY